UNITED STATES DISTRICT COURT
EASTERN DISTRCIT OF MICHIGAN
SOUTHERN DIVISION

Haley Hrdlicka,

          PLAINTIFF,

vs.                                    Case No.
                                           Hon.

General Motors LLC,
*a foreign limited liability company*,

          DEFENDANT.

| | |
|---|---|
| **GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.**<br>Donald J. Gasiorek (P24987)<br>Ray Carey (P33266)<br>Attorneys for Plaintiff<br>30500 Northwestern Hwy. Suite 425<br>Farmington Hills, MI 48334<br>Telephone: (248) 865-0001<br>Facsimile: (248) 865-0002<br>dgasiorek@gmgmklaw.com<br>Rcarey@gmgmklaw.com | |

## COMPLAINT AND JURY DEMAND

Plaintiff Haley Hrdlicka (hereinafter "Plaintiff" or "Mrs. Hrdlicka"), by and through her attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., complains against Defendant General Motors LLC (hereinafter "Defendant," "General Motors," or "Company") as follows:

1.     Plaintiff Haley Hrdlicka brings this action for interference with rights protected by and discrimination and retaliation in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq*.; for interference with her rights or attainment of rights under the  various retirement, health, and disabilities benefit plans of Defendant General Motors in violation of Sections 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., *see* 29 U.S.C. §1140; for discrimination of account of a disability and perceived disability, failure to accommodate a disability, and retaliation in violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L.A. §§37.1101, *et seq*.; and disparate treatment discrimination on account of age, gender and race in violation of Michigan's Elliott-Larsen Civil Rights Act, M.C.L.A. §§37.2201, *et seq*.

## **PARTIES**

2.     Plaintiff Haley Hrdlicka resides in the City of Bloomfield Hills, in Oakland County, State of Michigan, within the Eastern District of Michigan.

3.     General Motors Company is an entity now known and reorganized as Defendant General Motors LLC that acquired certain assets of General Motors Corporation after it filed for chapter 11 bankruptcy protection in conjunction with the bankruptcy reorganization.

4.     Defendant General Motors LLC is a limited liability company organized under the laws of the State of Delaware which maintains its corporate headquarters in Detroit, Michigan, within the Eastern District of Michigan.

5.     Plaintiff at all times relevant was employed by General Motors Corporation, General Motors Company, or Defendant General Motors LLC (hereinafter "Defendant," "General Motors," or "Company") as an Associate Sculptor, Sculptor, or Designer Sculptor in the Technical Staffs Group and later as University Relations and Outreach representative in the Design Academy, Recruiting and Outreach Department at the GM Technical Center in Warren, Michigan, until her employment was wrongfully terminated on August 21, 2019, effective, August 22, 2019.

## JURISDICTION AND VENUE

6.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

7.     This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 USC § 1331 (federal question jurisdiction); 29 U.S.C. §1132(e) and(f) (ERISA); and 29 U.S.C. § 2617 (FMLA).

8.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims for PDCRA and ELCRA violations.

9.     This Court has personal jurisdiction over Defendant because it maintains offices and facilities and engages in regular and systematic business and other activities within the Eastern District of Michigan and the acts attributed to Defendant that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

10.     Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides in and Defendant is located within the Eastern District of Michigan and the events that give rise to this claim occurred within the Eastern District of Michigan. *See also* 29 U.S.C. §1132(e)(2).

11.     Venue also is convenient in this judicial district.

## STATEMENT OF FACTS

12.     Mrs. Hrdlicka was born on January 7, 1966, and she currently is 54 years of age.

13.     Mrs. Hrdlicka was hired by General Motors on March 6, 1989, as an Associate Sculptor in the Technical Staffs Group at the GM Technical Center in Warren, Michigan.

14.     Mrs. Hrdlicka was employed as an Associate Sculptor, Sculptor, or Designing Sculptor at the GM Technical Center in Warren, Michigan, from this date until March 16, 2018.

15.     Throughout this period of time, Mrs. Hrdlicka was highly regarded by her peers, supervisors, and managers, she never received a negative job performance evaluation, she often received higher than average annual salary merit increases and bonuses, and she had no attendance or tardiness issues of any kind.

16.     On March 16, 2018, Mrs. Hrdlicka was transferred to a role as a University Relations and Outreach representative within the Design Academy, Recruiting and Outreach Department at the GM Technical Center in Warren, Michigan, a position she did not request, seek, or desire, which was the position she held at the time when her employment was wrongfully terminated.

17.     Mrs. Hrdlicka reported to Ms. Marguerite Eko, Manager, Design Academy, Recruiting and Outreach Department, from the date of this transfer through the date when her employment was wrongfully terminated.

18.     Mrs. Hrdlicka was unfamiliar with the duties and responsibilities of the Design Academy, Recruiting and Outreach Department position at the time of the transfer, and she received little guidance and support from Ms. Eko as she struggled to adapt to these new responsibilities.

19.     Although Mrs. Hrdlicka received a positive performance evaluation from Ms. Eko for 2018, the circumstances related to her transfer to the position within the Design Academy, Recruiting and Outreach Department, the work

environment within the Design Academy, Recruiting and Outreach Department, and the mistreatment she received from Ms. Eko and another employee in the University Relations and Outreach department enabled by Ms. Eko were intolerable.

20.    The circumstances related to Mrs. Hrdlicka's transfer to and the hostile work environment within the Design Academy, Recruiting and Outreach Department and the mistreatment she received from Ms. Eko and another department employee enabled by Ms. Eko adversely affected Mrs. Hrdlicka's physical and behavioral health, and she became severely depressed as a consequence.

21.    The disabling physical and behavioral health conditions and severe depression Mrs. Hrdlicka experienced substantially limited Mrs. Hrdlicka's ability to think, concentrate, sleep, interact with others, care for herself, and work, but these limitations were unrelated to her qualifications for and her ability to perform the essential functions of her jobs as an Associate Sculptor, Sculptor, or Designer Sculptor in the Technical Staffs Group and later in the Design Academy, Recruiting and Outreach Department at the GM Technical Center in Warren, Michigan, with or without accommodation.

22.    Mrs. Hrdlicka reported these concerns to Ms. Eko and General Motors Human Resources representatives and requested reassignment or

transfer back to her former department and position for these reasons and as a workplace accommodation on a number of occasions during 2018 and 2019, but she was ignored.

23.   Ms. Eko and General Motors Human Resources and other representatives denied opportunity for Mrs. Hrdlicka to return to her former department and position although positions for which she was qualified were vacant and her former managers and supervisors requested that she be permitted to return.

24.   Ms. Eko and General Motors Human Resources and other representatives did not engage Mrs. Hrdlicka in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for work related accommodations; denied Mrs. Hrdlicka's requests for reassignment or transfer back to her former department and/or other work related accommodations; did not address her concerns about the work environment and mistreatment she was experiencing within the Design Academy, Recruiting and Outreach Department; did not advise her of her right to request FMLA leave; and did not inquire about whether she needed FMLA leave after she gave notice of the circumstances that were adversely affecting Mrs. Hrdlicka's physical and

behavioral health and that had caused her to become severely depressed as a consequence.

25.    The failure of Ms. Eko and General Motors Human Resources and other representatives to engage Mrs. Hrdlicka in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for work related accommodations, grant Mrs. Hrdlicka's requests for reassignment or transfer back to her former department and/or other workplace accommodations, address her concerns about the work environment and mistreatment she was experiencing within the Design Academy, Recruiting and Outreach Department, advise her of her right to request FMLA leave, and inquire about whether she needed FMLA leave exacerbated the disabling physical and behavioral health conditions and severe depression that she was experiencing.

26.    The exacerbation of the disabling physical and behavioral health conditions and severe depression Mrs. Hrdlicka experienced further limited Mrs. Hrdlicka's ability to think, concentrate, sleep, interact with others, care for herself, and work, interfered with her ability to timely communicate with her supervisor, Ms. Eko,  and caused her to experience bouts of social withdrawal and to be tardy and absent from work with and without prior notice on various occasions beginning in May, 2019.

27.    Although Mrs. Hrdlicka's tardiness and absenteeism were unusual and out of character for her when considered in conjunction with her 27 year General Motors employment history and although Mrs. Hrdlicka gave notice to Ms. Eko and General Motors Human Resources representatives that she was adversely affected by the disabling physical and behavioral health conditions and severe depression she was experiencing, they still failed to engage Mrs. Hrdlicka in an interactive process with respect to her need for work related accommodations, denied Mrs. Hrdlicka's requests for reassignment or transfer back to her former department and/or other work related accommodations, address her concerns about the work environment and mistreatment she was experiencing within the University Relations and Outreach Department, advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing, and inquire about whether she needed FMLA leave.

28.    Defendant could have accommodated Mrs. Hrdlicka's disabling physical and behavioral health related conditions and severe depression that were the cause of her tardiness and absenteeism by, among other things, granting her requests for transfer back to her former department or by providing other work related accommodations, allowing her to work remotely, modifying attendance and

call in policies, and/or granting her FMLA or other types of paid or unpaid leave without suffering undue hardship.

29.     Instead, Ms. Eko began to document instances when Mrs. Hrdlicka was absent or late for work, although she did not track attendance and tardiness of Mrs. Hrdlicka's peers and General Motors employees are allowed to use vacation and other paid time off days when they are or will absent due to illness, injury, and other unanticipated personal reasons, in conjunction with a plan supported by General Motors Human Resources and other representatives to facilitate the termination of Mrs. Hrdlicka's employment rather than comply with legal obligations owed to Mrs. Hrdlicka.

30.     Instead, on Monday, June 10, 2019, after Ms. Eko knew that Mrs. Hrdlicka sought medical treatment on Friday, June 7, 2019, Ms. Eko met with Mrs. Hrdlicka to admonish her about her attendance and tardiness rather than engage Mrs. Hrdlicka in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for work related accommodations, grant Mrs. Hrdlicka's requests for reassignment or transfer back to her former department and/or other work related accommodations, address her concerns about the work environment and mistreatment she was experiencing within the Design Academy, Recruiting and Outreach Department, advise her that she may be

entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing, and inquire about whether she needed FMLA leave.

31.     Instead, in late June or early July, 2019, although Ms. Eko knew that Mrs. Hrdlicka was experiencing ongoing, disabling physical and behavioral health conditions and severe depression, Ms. Eko conducted a mid-year performance evaluation of Mrs. Hrdliclka and gave her a "Partially Achieves Expectations" review with respect to both "Performance" and "Behavior" that she attributed to Mrs. Hrdlicka's attendance although Ms. Eko failed to provide specific examples "Performance" and "Behavior" deficiencies that she attributed to Mrs. Hrdlicka's absenteeism and tardiness, most of the instances or absenteeism and tardiness cited by Ms. Eko were related to the disabling physical and behavioral health conditions and severe depression Mrs. Hrdlicka was experiencing, and Mrs. Hrdlicka's absences and tardiness did not affect her job performance.

32.     Instead, Ms. Eko and General Motors Human Resources and other representatives interfered with Mrs. Hrdlicka's right to be granted FMLA leave and workplace accommodations and discriminated and retaliated against her on August 14, 2019, by subjecting her to a final warning that further instances of unauthorized absences and tardiness would result in employment

termination although most of the instances of absenteeism and tardiness cited by Ms. Eko were related to the disabling physical and behavioral health conditions and severe depression Mrs. Hrdlicka was experiencing and Mrs. Hrdlicka's absences and tardiness did not affect her job performance.

33.    The final warning included unreasonable work hour, absence reporting, and other requirements that were impossible for Mrs. Hrdlicka to satisfy without a transfer back to her former department or other reasonable work related accommodations, including permission for her to work remotely, modification of attendance and call in policies, and/or granting her FMLA or other types of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions and severe depression she was experiencing.

34.    Mrs. Hrdlicka requested an opportunity to meet privately with General Motors Human Resources representatives and scheduled a meeting with them that was to occur on August 19, 2019, after she received the August 14, 2019 final warning.

35.    On August 19, 2019, Mrs. Hrdlicka attended the scheduled meeting with the General Motors Human Resources representatives; however, they allowed Ms. Eko to be present and participate in the meeting contrary to what Plaintiff had requested.

36.    As a result, Mrs. Hrdlicka felt too intimidated to explain that her absenteeism and tardiness since May, 2019, was attributable to the disabling physical and behavioral health conditions and severe depression she was experiencing due to the work environment and mistreatment she was experiencing within the Design Academy, Recruiting and Outreach Department.

37.    Mrs. Hrdlicka arranged to meet and did meet again with the General Motors Human Resources representatives later on August 19, 2019, in an attempt to explain that her absenteeism and tardiness during 2019 was attributable to the disabling physical and behavioral health conditions and severe depression she was experiencing due to the work environment and mistreatment she was experiencing within the Design Academy, Recruiting and Outreach Department.

38.    Although Mrs. Hrdlicka's tardiness and absenteeism were unusual and out of character for her when considered in conjunction with her 27 year General Motors employment history and although Mrs. Hrdlicka gave notice to Ms. Eko and General Motors Human Resources representatives that her absences and tardiness were caused by the disabling physical and behavioral health conditions and severe depression she was experiencing, they did not engage Mrs. Hrdlicka in an interactive process with respect to her need for work related accommodations, denied Mrs. Hrdlicka's requests for

reassignment or transfer back to her former department and/or other work related accommodations, did not address her concerns about the work environment and mistreatment she was experiencing within the Design Academy, Recruiting and Outreach Department, did not allow her to work or propose that she work remotely, did not modify attendance and call in requirements in the August 14, 2019 final warning, did not advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing, and did not grant her FMLA or any other type of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions and severe depression she was experiencing.

39.    Instead, the General Motors Human Resources representatives with whom Mrs. Hrdlicka met on August 19, 2019, told her that they were only concerned about whether she was absent or tardy since August 14, 2019, not whether these were caused by the disabling physical and behavioral health related and severe depression that she was experiencing.

40.    This lack of concern for Mrs. Hrdlicka and about the reasons for her absenteeism and tardiness further exacerbated the disabling physical and behavioral health conditions and severe depression Mrs. Hrdlicka experienced, further limited Mrs. Hrdlicka's ability to think, concentrate, sleep, interact with

others, care for herself, and work, interfered with her ability to timely communicate with her supervisor, Ms. Eko, and caused her to experience bouts of social withdrawal and to be tardy from work with and without prior notice on two or three occasions since August 14, 2019.

41.    Mrs. Hrdlicka's employment was terminated, effective August 22, 2019, ostensibly because she had been tardy for work on two or three occasions since August 14, 2019, due to the disabling physical and behavioral health conditions and severe depression she was experiencing as a result of the work environment for which she sought and needed help and although she should have instead been transferred back to a position in her former department, offered alternate employment opportunities, allowed to work remotely, the attendance and call in requirements in the August 14, 2019 final warning should have been modified, she should have been advised that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing, and she should have been granted FMLA or any other type of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions and severe depression she was experiencing.

42.    Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment unlawfully failed to engage

Mrs. Hrdlicka in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for work related accommodations, address Mrs. Hrdlicka's accommodation requests, grant her the transfer and/or any other needed and reasonable accommodations, inquire about whether she needed FMLA leave, and grant her FMLA leave.

43.    Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment unlawfully interfered with her right to be granted FMLA leave, discriminated against her on account of her age, sex, race, disability or perceived disability, unlawfully failed to accommodate her disability, and  retaliated against her in reaction to her accommodation requests and need for FMLA leave when they denied her requests for transfer; on August 14, 2019, when they subjected her to a final warning and unreasonable work hour, absence reporting and other requirements; and on August 21, 2019, when they notified Mrs. Hrdlicka that her General Motors employment was terminated, effective August 22, 2109, because she was unable to comply with these unreasonable requirements due to the disabling physical and behavioral health conditions and severe depression she was experiencing.

44.     Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment did not give due consideration to Mrs. Hrdlicka's history of more than satisfactory job performance; her previous, unblemished disciplinary record; the routine recognition she received for her dedication, hard work, and commitment as a General Motors employee from her peers, supervisors, and managers within her former department to which she had sought to be transferred; her requests for transfer back to her former department and job position; and the work environment related and disabling physical and behavioral health related cause of and mitigating circumstances precipitating Mrs. Hrdlicka's tardiness and absenteeism during the period since May, 2019, since they were predisposed to terminate her employment because of her age, gender, race, and status as an individual with a disability or individual regarded as disabled, because she exercised or would have exercised FMLA rights but for Defendant's interference with these rights, in retaliation for her requests for work related accommodations and FMLA leave, and to deprive her of work related accommodations and rights or attainment of rights under the FMLA and the Company's various retirement, health, and disability benefit plans .

45.     Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment unlawfully treated Mrs.

Hrdlicka differently than similarly situated younger, male, non-Caucasian, non-disabled, non-regarded as disabled, and non-FMLA eligible employees whose requests for transfer to another department were granted and/or who engaged in comparable violations of Company policy, but whose employment was not terminated as a consequence.

46.     Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment unlawfully treated Mrs. Hrdlicka differently than similarly situated employees who had not requested workplace accommodations and/or FMLA leave, who were not in need of workplace accommodations and/or FMLA leave, whose requests for transfer to another department were granted, and/or who engaged in comparable violations of Company policy, but whose employment was not terminated as a consequence.

47.     Ms. Eko and other General Motors representatives denied Mrs. Hrdlicka's requests for transfer to a position in her former department, did not offer her alternate employment related accommodations, did not allow her to work remotely, did not modify attendance and call in policies, did not advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing, did not grant her FMLA or any other type of paid or unpaid leave

to obtain treatment for the disabling physical and behavioral health conditions she was experiencing, and terminated her employment because of her age, gender, race, and status as an individual with a disability or individual regarded as disabled, because she exercised or would have exercised FMLA rights but for Defendant's interference with these rights, in retaliation for her requests for work related accommodations and FMLA leave, and to deprive her of work related accommodations and rights or attainment of rights under the FMLA and the Company's various retirement, health, and disability benefit plans.

48.    Between October and November, 2018, Mrs. Hrdlicka, like thousands of other General Motors employees, was offered the opportunity to voluntarily terminate her General Motors employment in consideration for certain severance benefits that the Company offered in conjunction with a well-publicized program to reduced its North American salaried/white-collar work force by at least 8,000 employees ("voluntary buy-out offer").

49.    Mrs. Hrdlicka declined to accept the voluntary buy-out offer.

50.    The number of General Motors employees who accepted the voluntary buy-out offer was not sufficient for the Company to achieve its goal to reduce its North American salaried/white-collar workforce by 8,000.

51.    As a result, the Company initiated a process that began in late January or early February, 2019, to involuntarily terminate employees in order to meet its goal.

52.    Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment unlawfully failed to engage Mrs. Hrdlicka in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for work related accommodations, address Mrs. Hrdlicka's accommodation requests, grant her the needed and reasonable accommodations she requested, approve her requests for transfer back to her former department and job position, allow her to work remotely, modify attendance and call in policies, inquire about whether she needed FMLA leave, and grant her FMLA or any other type of paid or unpaid leave since they had decided to terminate Mrs. Hrdlicka's employment in conjunction with General Motors' process to involuntarily terminate employees to reduce its North American salaried/white-collar workforce by 8,000 because of her age, gender, race, and status as an individual with a disability or individual regarded as disabled, because she exercised or would have exercised FMLA rights but for Defendant's interference with these rights, in retaliation for her requests for work related accommodations and FMLA leave, and to deprive her of work

related accommodations and rights or attainment of rights under the FMLA and the Company's various retirement, health, and disability benefit plans.

53.    Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment unlawfully interfered with her right to be granted FMLA leave, discriminated against her on account of her age, sex, race, disability or perceived disability, unlawfully failed to accommodate her disability, and retaliated against her in reaction to her accommodation requests and need for FMLA leave when they denied her requests for transfer; on August 14, 2019, when they subjected her to a final warning and unreasonable work hour, absence reporting and other requirements; and on August 21, 2019, when they notified Mrs. Hrdlicka that her General Motors employment was terminated because they had decided to terminate Mrs. Hrdlicka's employment for these unlawful reasons and to deprive her of rights or attainment of rights under the FMLA and the Company's various retirement, health, and disability benefit plans in conjunction with General Motors' process to involuntarily terminate employees to reduce its North American salaried/white-collar workforce by 8,000.

54.    Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment did not give due consideration to Mrs. Hrdlicka's history of more than satisfactory job

performance; her previous, unblemished disciplinary record; the routine recognition she received for her dedication, hard work, and commitment as a General Motors employee from her peers, supervisors, and managers within her former department to which she had sought to be transferred; her requests for transfer back to her former department and job position; and the work and physical and behavioral health related cause of and mitigating circumstances precipitating Mrs. Hrdlicka's tardiness and absenteeism during the late spring and summer of 2019 since they had decided to terminate Mrs. Hrdlicka's employment because of her age, gender, race, and status as an individual with a disability or individual regarded as disabled, because she exercised or would have exercised FMLA rights but for Defendant's interference with these rights, in retaliation for her requests for work related accommodations and FMLA leave, and to deprive her of work related accommodations and rights or attainment of rights under the FMLA and the Company's various retirement, health, and disability benefit plans in conjunction with General Motors' process to involuntarily terminate employees to reduce its North American salaried/white-collar workforce by 8,000.

55.    Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment unlawfully treated Mrs. Hrdlicka differently than similarly situated younger, male, non-Caucasian, non-

disabled, non-regarded as disabled, and non-FMLA eligible employees whose requests for transfer to another department were granted and/or who engaged in comparable violations of Company policy, but whose employment was not terminated as a consequence, because they had decided to terminate Mrs. Hrdlicka's employment in conjunction with General Motors' process to involuntarily terminate employees to reduce its North American salaried/white-collar workforce by 8,000.

56.    Ms. Eko and other General Motors representatives involved in the decision to terminate Mrs. Hrdlicka's employment unlawfully treated Mrs. Hrdlicka differently than similarly situated employees who had not requested workplace accommodations and/or FMLA leave, who were not in need of workplace accommodations and/or FMLA leave, whose requests for transfer to another department were granted, and/or who engaged in comparable violations of Company policy, but whose employment was not terminated as a consequence, because they had decided to terminate Mrs. Hrdlicka's employment in conjunction with General Motors' process to involuntarily terminate employees to reduce its North American salaried/white-collar workforce by 8,000.

57.    Ms. Eko and other General Motors representatives denied Mrs. Hrdlicka's requests for transfer to a position in her former department, did not

offer her alternate employment related accommodations, did not allow her to work remotely, did not modify attendance and call in policies, did not advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing, did not grant her FMLA or other types of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions and severe depression she was experiencing, and terminated her employment because of her age, gender, race, and status as an individual with a disability or individual regarded as disabled, because she exercised or would have exercised FMLA rights but for Defendant's interference with these rights, in retaliation for her requests for workplace accommodation and FMLA leave, to deprive her of workplace accommodations and rights or attainment of rights under the FMLA and the Company's various retirement, health, and disability benefit plans, and because they had decided to terminate Mrs. Hrdlicka's employment in conjunction with General Motors' process to involuntarily terminate employees to reduce its North American salaried/white-collar workforce by 8,000.

58.     This enabled the Company to replace Mrs. Hrdlicka with a significantly younger employee who did not share her other characteristics as originally contemplated but for her declination of the voluntary buy-out offer.

59.    On August 26, 2019, Mrs. Hrdlicka appealed Defendant's decision to terminate her employment decision to JustUs, a Company sponsored "Open-Door" process for reconsideration of such actions.

60.    The "Open-Door" process at least in the manner in which it was administered by JustUs with respect to Mrs. Hrdlicka's appeal was a sham.

61.    The JustUs representative assigned to her case was abjectly unqualified for her role.

62.    Nevertheless, Mrs. Hrdlicka and/or her representatives apprised the JustUs representative of the facts and circumstances discussed above.

63.    They also notified the JustUs representative during the Fall of 2019 while Mrs. Hrdlicka's appeal was pending that Mrs. Hrdlicka had been diagnosed with a brain tumor, that she had surgery to remove it, that it contributed to the adverse, disabling physical and behavioral health conditions and severe depression Mrs. Hrdlicka had been experiencing during 2019, and that this caused Mrs. Hrdlicka to be tardy and/or absent from work on various occasions since May, 2019.

64.    Mrs. Hrdlicka's medical condition likely would have been diagnosed sooner had Ms. Eko and General Motors Human Resources representatives complied with their obligations to inquire about whether she needed FMLA leave and grant her needed FMLA leave and/or to engage her in

an interactive process with respect to her requests for and need of work related accommodations.

65.    The JustUs representative did not share any opinion or recommendation she may have made to General Motors about the decision to terminate Mrs. Hrdlicka's employment with Mrs. Hrdlicka or her representatives.

66.    Instead, on November 25, 2019, she forwarded a letter to Mrs. Hrdlicka with a copy of "the Final Determination Letter of General Motors in regard to your Open-Door Claim," dated the same day and signed by Ms. Shannon Myers, General Motors Assistant for Global Workplace Policy.

67.    Ms. Myers' letter gave notice that Mrs. Hrdlicka's appeal had been summarily rejected by her.

68.    Ms. Myers did not address the facts and circumstances reported to the JustUs representative and alleged above, including, but not limited to: (1) the failure to engage Mrs. Hrdlicka in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for work related accommodations; the failure to address Mrs. Hrdlicka's accommodation requests; the failure to grant her the needed and reasonable accommodations she requested; the failure to approve her requests for transfer back to her former department and job position; the

failure to allow her to work remotely; the failure to modify attendance and call in policies; the failure to advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing; the failure to inquire about whether she needed FMLA leave; and the failure to grant her FMLA or any other type of paid or unpaid leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing; and (2) as reported to the JustUs representative, that Mrs. Hrdlicka had been diagnosed with a brain tumor; that she had surgery to remove it; that it contributed to the adverse, disabling physical and behavioral health conditions and severe depression Mrs. Hrdlicka had been experiencing throughout 2019; and that this caused Mrs. Hrdlicka to be tardy and/or absent from work on various occasions between May and August, 2019.

69.    Ms. Myers and other General Motors representatives involved in the decision to deny Mrs. Hrdlicka's appeal denied it because of her age, gender, race, and status as an individual with a disability or individual regarded as disabled, because she exercised or would have exercised FMLA rights but for Defendant's interference with these rights, in retaliation for her requests for work related accommodations and need for FMLA leave, to deprive her of workplace accommodations and rights or attainment of rights under the FMLA

and the Company's various retirement, health, and disability benefit plans, and because they had decided to terminate Mrs. Hrdlicka's employment because of her age in conjunction with General Motors' process to involuntarily terminate employees to reduce its North American salaried/white-collar workforce by 8,000.

70.    Defendant's purported reasons for the failure or refusal to: engage Mrs. Hrdlicka in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for workplace accommodations;  grant Mrs. Hrdlicka's requests for transfer to a position in her former department or other reasonable work related accommodations; allow her to work remotely; modify attendance and call in policies; advise her that she may be entitled to FMLA or other leave for the disabling physical and behavioral health related conditions, including the brain tumor and severe depression, she was experiencing; grant her FMLA or any other type of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions, including the brain tumor and severe depression, she was experiencing; for the termination of  her employment; and for the denial of her appeal from the termination of her employment  are not true and are a pre-text for discrimination against her on account of her age, gender, race, and status as an individual with a disability or

individual regarded as disabled, interference with her ability to exercise FMLA rights, discrimination and retaliation for her requests for work related accommodations and FMLA leave, and deprivation of her right to work related accommodations and rights or attainment of rights under the FMLA and the Company's various retirement, health, and disability benefit plans.

## COUNT I
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")

71.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

72.     At all times relevant, Plaintiff was an employee subject to the protections of the FMLA and Defendant and each of its representatives was an employer obligated to comply with the FMLA because Defendant routinely employed 50 or more employees at Plaintiff's work location, Plaintiff had been employed by Defendant for more than 12 months, and Plaintiff had worked more than 1250 hours for Defendant during the 12 month period preceding the date when Defendant had notice of her need for FMLA leave or when any FMLA leave would have commenced. 29 U.S.C. §2611(2) and (4).

73.     The FMLA gives employees the right to take up to 12 weeks of continuous or intermittent leave during a 12-month period "because of a

serious health condition that makes the employee unable to perform the functions of" her job. 29 U.S.C. §2612(a) (1)(D).

74.    The FMLA provides that an employee taking FMLA leave has an accompanying right to return to the same or an equivalent position at the conclusion of the leave period.

75.    At all times relevant, Plaintiff was an employee entitled to up to 12 weeks of continuous or intermittent FMLA leave because she was afflicted with disabling physical and behavioral health conditions, including a brain tumor and severe depression, each of which was a serious health condition that required in patient care in a medical care facility or continuing treatment from a healthcare provider, substantially limited Plaintiff's ability to think, concentrate, sleep, interact with others, care for herself, and work, and otherwise rendered her unable to satisfactorily perform the functions of her job without work related accommodations and/or continuous or intermittent FMLA leave. 29 U.S.C. §§ 2611(11), 2612(a)(1)(D).

76.    Under the FMLA, Defendant had an obligation to advise Plaintiff that she was entitled to up to 12 weeks of continuous or intermittent FMLA leave for the disabling physical and behavioral health conditions, including a brain tumor and severe depression, that afflicted her.

77.    Under the FMLA, Defendant had an obligation to provide Plaintiff with up to 12 weeks of continuous or intermittent FMLA leave for the disabling physical and behavioral health conditions, including a brain tumor and severe depression, that afflicted her and otherwise rendered her unable to satisfactorily perform the functions of her job without work related accommodations and/or continuous or intermittent FMLA leave. 29 U.S.C. §§ 2611(11), 2612(a)(1)(D).

78.    Under the FMLA, Defendant was prohibited from interfering with Plaintiff's exercise of FMLA rights, restraining Plaintiff from exercising FMLA rights, and denying Plaintiff's exercise of or attempt to exercise FMLA rights. 29 U.S.C. § 2615(a)(1).

79.    Under the FMLA, Defendant was prohibited from discriminating and retaliating against Plaintiff because she exercised or attempted to exercise FMLA rights by terminating her employment or taking other adverse action against her. 29 U.S.C. § 2615(a)(2).

80.    Notwithstanding Defendant's duties under the FMLA as set forth above, Defendant's representatives willfully interfered with Plaintiff's exercise of FMLA rights, restrained Plaintiff from exercising FMLA rights, and denied Plaintiff's exercise of or attempt to exercise FMLA rights, discriminated and retaliated against Plaintiff in violation of the FMLA, and otherwise violated the

FMLA: by failing to advise Plaintiff that she was entitled to FMLA leave for the disabling physical and behavioral health related conditions, including the brain tumor and severe depression, that afflicted her; by failing to provide Plaintiff with FMLA continuous or intermittent leave so that she could obtain needed medical treatment for these conditions; by denying Plaintiff's requests for transfer to a position in her former department or other reasonable work related accommodations; by terminating Plaintiffs employment to prevent her from receiving reasonable work related accommodations and taking FMLA or other leave; and by denying Plaintiff's appeal from the termination of her employment to prevent her from receiving reasonable work related accommodations and taking FMLA or other leave.

81.    As a direct and proximate result of Defendant's acts of interference, discrimination and retaliation in violation of the FMLA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability, retirement and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT II
## VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA")

82.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

83.    At all times relevant, Plaintiff was an employee of Defendant and a participant within the ERISA meaning of these terms, *see* 29 U.S.C. § 1002(6) and (7), in an employee welfare benefit plan, employee pension benefit plan, and/or employee benefit plan within the ERISA meanings of these terms, *see* 29 U.S.C. § 1002 (1)-(3), sponsored by Defendant and/or for which Defendant was an employer, fiduciary and/or administrator within the ERISA meanings of these terms, *see* 29 U.S.C. §§ 1002(5) and (16), 1102(a)(2).

84.    Under Defendant's defined benefit and contribution retirement plans, Plaintiff was eligible for substantial pension and other normal and disability retirement benefits that would have significantly increased in value with each additional year of service provided by Plaintiff to Defendant and each contribution made by Plaintiff and Defendant to the applicable plans.

85.    Under Defendant's employee welfare benefit plan, Plaintiff and her family were entitled to health care, prescription, and dental benefits and Plaintiff was also entitled to short-term and long-term disability and other

benefits while she remained actively employed by the Company and continuing after she retired from the Company.

86.     Under Defendant's employee welfare benefit plan, Plaintiff and her family would have received continuing health care, prescription, and dental benefits and Plaintiff would have received short-term and perhaps long-term disability benefits had she been granted FMLA or other leave to seek treatment for and recuperate from the disabling physical and behavioral health related conditions, including the brain tumor and severe depression, that afflicted her while she was employed by Defendant.

87.     Under section 510 of ERISA, it is unlawful for an employer and its agents and representatives to discharge, suspend, discipline, or discriminate against a participant in an employee welfare benefit plan, employee pension benefit plan, employee defined contribution plan, and/or employee benefit plan for exercising any right to which such participant is entitled under the provisions of the plan or for purposes of interfering with the attainment of any right to which such participant may become entitled under the provisions of the plan. 29 U.S.C. § 1140.

88.     Notwithstanding Defendant's duties as set forth above, Defendant' representatives willfully interfered with Plaintiff's exercise of rights to which she was entitled and interfered with the attainment of rights to which she would have become entitled under the provisions of its employee welfare benefit plan,

employee retirement or pension benefit plan, and/or employee benefit plan with specific intent to deprive her of these benefits in violation of section 510 of ERISA: by failing to advise Plaintiff that she was entitled to FMLA or other paid or unpaid leave for the disabling physical and behavioral health related conditions, including the brain tumor and severe depression, that afflicted her; by failing to provide Plaintiff with continuous or intermittent FMLA or other leave so that she could obtain needed medical treatment for these conditions; by failing to grant Plaintiff's requests for transfer to a position in her former department or other reasonable work related accommodations; by terminating Plaintiffs employment to prevent her from receiving reasonable work related accommodations, taking FMLA or other leave, and receiving benefits to which she is entitled Defendant's under the provisions of Defendant's employee welfare benefit plan, employee retirement or pension benefit plan, and/or employee benefit plan; and by denying Plaintiff's appeal from the termination of her employment to prevent her from receiving reasonable work related accommodations, taking FMLA or other leave, and receiving benefits to which she is entitled Defendant's under the provisions of Defendant's employee welfare benefit plan, employee retirement or pension benefit plan, and/or employee benefit plan.

89.     As a direct and proximate result of Defendant's acts of interference in violation of section 510 of ERISA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability, pension and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**COUNT III**
**VIOLATIONS OF MICHIGAN'S PERSONS WITH**
**DISABILITIES CIVIL RIGHTS ACT ("PDCRA")**
**(Disability Discrimination, Failure to Accommodate and Retaliation)**

90.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

91.   At all relevant times, Plaintiff was an employee and Defendant was an employer within the meaning of these terms in Michigan's PWDCRA, M.C.L. §37.1101, *et seq.*

**Disability Discrimination**

92.   The PWDCRA makes it unlawful for an employer and its agents and representatives to discriminate against a qualified individual because the

individual has a disability, a record of a disability, or because the employer regards the individual as disabled.

93.   At all times relevant to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of her jobs as an Associate Sculptor, Sculptor, or Designer Sculptor in the Technical Staffs Group and later in the Design Academy, Recruiting and Outreach Department at the GM Technical Center in Warren, Michigan.

94.   At all times relevant to this action, Plaintiff was a qualified individual with a disability, had a record of such a disability, and/or was regarded by Defendant as having such a disability within the meaning of the PWDCRA because she was afflicted with disabling physical and behavioral health conditions, which included a brain tumor and severe depression, that substantially limited Plaintiff's ability to think, concentrate, sleep, interact with others, care for herself, and work, but which was unrelated to her qualifications for and her ability to perform the essential functions of her jobs as an Associate Sculptor, Sculptor, or Designer Sculptor in the Technical Staffs Group and later in the Design Academy, Recruiting and Outreach Department at the GM Technical Center in Warren, Michigan, with or without accommodation.

95.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability, because it regarded Plaintiff as disabled, and/or because Plaintiff had a history of a disability when its representatives: did not engage Ms. Hrdlicka in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for work related accommodations; did not grant Plaintiff's requests for transfer to a position in her former department or other reasonable work related accommodations; did not allow her to work remotely; did not modify attendance and call in policies; did not advise her that she may be entitled to FMLA or other leave for the disabling physical and behavioral health related conditions, including the brain tumor and severe depression, she was experiencing; did not grant her FMLA or any other type of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions, including the brain tumor and severe depression, she was experiencing; terminated her employment; and denied her appeal from the termination of her employment.

**Failure to Accommodate**

96.    The PWDCRA further requires employers to engage in a meaningful interactive process with employees with regard to reasonable accommodations.

97.   At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship.

98.   Defendant's duty to accommodate Plaintiff included, but was not limited to, transferring her to a position in her former department, offering her alternate employment opportunities, allowing her to work remotely, modifying attendance and call in policies, and/or providing Plaintiff with FMLA, medical, or other continuous or intermittent leave.

99.   At all times relevant, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

100.   Defendant breached its duty under the PWDCRA to accommodate Plaintiff's disabilities when its representatives: did not engage Plaintiff in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for workplace accommodation; did not grant Plaintiff's requests for reassignment or transfer back to her former department and/or for other work related accommodations; did not address her concerns about the work environment and mistreatment she was experiencing from Ms. Eko and the other employee within the Design Academy, Recruiting and Outreach Department enabled by Ms. Eko; did not allow her to work or propose that she work remotely; did not

modify attendance and call in requirements in the August 14, 2019 final warning; did not advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing and/or grant her FMLA or any other type of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions, including the brain tumor and severe depression, she was experiencing; terminated Plaintiff's employment; and denied Plaintiff's appeal from the decision to terminate her employment.

## Retaliation

101.   At all times relevant hereto, Defendant and its representatives had a duty under the PWDCRA not to retaliate against Plaintiff with respect to her employment, compensation, terms, conditions or privileges of her employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive Plaintiff of employment opportunities or otherwise adversely affect the employment status of Plaintiff in retaliation for her requesting work related accommodations for her disabilities and/or complaining about disability discrimination.

102.   Notwithstanding said duties as set forth above, Defendant retaliated against Plaintiff for requesting work related accommodations for her disabilities and/or complaining of disability discrimination when its

representatives denied her requests for transfer to her former department and position and/or other work related accommodations; on August 14, 2019, when they subjected her to a final warning and unreasonable work hour, absence reporting and other requirements; on August 21, 2019, when they notified Plaintiff that her General Motors employment was terminated; on August 22, 2019, when her employment was terminated; and in November, 2019, when they denied her appeal from the decision to terminate her employment.

103.   As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability, pension and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**COUNT IV**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT –**
**SEX DISCRIMINATION**

104.   Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

105.   At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

106.   At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against her based on her sex.

107.   Defendant discriminated against Plaintiff on account of her sex and violated Plaintiff's rights under the ELCRA when its representatives: did not engage Plaintiff in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for workplace accommodation; did not grant Plaintiff's requests for reassignment or transfer back to her former department and/or for other work related accommodations; did not address her concerns about the work environment and mistreatment she was experiencing from Ms. Eko and the other employee within the Design Academy, Recruiting and Outreach Department enabled by Ms. Eko; did not allow her to work or propose that she work remotely; did not modify attendance and call in requirements in the August 14, 2019 final warning; did not advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing and/or grant her FMLA or any

other type of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions, including the brain tumor and severe depression, she was experiencing; terminated Plaintiff's employment; and denied Plaintiff's appeal from the decision to terminate her employment.

108.   As a direct and proximate result of Defendant's discrimination on account of Plaintiff's sex in violation of the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability, pension and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT V
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – AGE DISCRIMINATION

109.   Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

110.   At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

111.   At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against her based on her age.

112.   Defendant discriminated against Plaintiff on account of her age and violated Plaintiff's rights under the ELCRA when its representatives: did not engage Plaintiff in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for workplace accommodation; did not grant Plaintiff's requests for reassignment or transfer back to her former department and/or for other work related accommodations; did not address her concerns about the work environment and mistreatment she was experiencing from Ms. Eko and the other employee within the Design Academy, Recruiting and Outreach Department enabled by Ms. Eko; did not allow her to work or propose that she work remotely; did not modify attendance and call in requirements in the August 14, 2019 final warning; did not advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing and/or grant her FMLA or any other type of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions, including the brain tumor and severe

depression, she was experiencing; terminated Plaintiff's employment; and denied Plaintiff's appeal from the decision to terminate her employment.

113.   As a direct and proximate result of Defendant's discrimination on account of Plaintiff's age in violation of the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability, pension and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**COUNT VI**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT –**
**RACE DISCRIMINATION**

114.   Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

115.   At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

116.   At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against her based on her race.

117.   Defendant discriminated against Plaintiff on account of her race and violated Plaintiff's rights under the ELCRA when its  representatives:  did not engage Plaintiff in an interactive process with respect to the disabling physical and behavioral health conditions and severe depression she was experiencing and her need for workplace accommodation; did not grant Plaintiff's requests for reassignment or transfer back to her former department and/or for other work related accommodations; did not address her concerns about the work environment and mistreatment she was experiencing from Ms. Eko and the other employee within the Design Academy, Recruiting and Outreach Department enabled by Ms. Eko; did not allow her to work or propose that she work remotely; did not modify attendance and call in requirements in the August 14, 2019 final warning; did not advise her that she may be entitled to FMLA leave for the disabling physical and behavioral health related conditions and severe depression she was experiencing and/or grant her FMLA or any other type of paid or unpaid leave to obtain treatment for the disabling physical and behavioral health conditions, including the brain tumor and

severe depression, she was experiencing; terminated Plaintiff's employment; and denied Plaintiff's appeal from the decision to terminate her employment.

118.   As a direct and proximate result of Defendant's discrimination on account of Plaintiff's race in violation of the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability, pension and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**Wherefore,** Plaintiff requests the following relief:

a.      A Judgment or Order Judgment or Order reinstating Plaintiff to her former position in her original department or a comparable position;

b.      A Judgment or Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $75,000.00 to which she is found to be entitled, inclusive of back and front pay, bonus, and other compensation lost by Plaintiff due to termination of her employment and reimbursement for costs incurred by Plaintiff to replace lost benefits;

c.      A Judgment or Order of this Court awarding Plaintiff liquidated damages in accordance with the FMLA;

d.    A Judgment or Order of this Court awarding Plaintiff compensatory damages for mental anguish, emotional distress, humiliation and injury to her reputation;

e.    A Declaratory Judgment of this Court restoring Plaintiff's benefits retroactive to the date when her employment was terminated and requiring Defendant to fund these as though Plaintiff's employment had not been terminated;

f.    A Judgment or Order of this Court awarding Plaintiff pre and post judgment interest, costs, and attorney fees; and

g.    A Judgment or Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN P.C.**

BY:    _/s/ Raymond J. Carey_
       Raymond J. Carey (P33266)
       Attorneys for Plaintiff
       30500 Northwestern Hwy. Ste. 425
       Farmington Hills, MI 48334
Dated: April 24, 2020    (248) 865-0001
       rcarey@gmgmklaw.com

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff Haley Hrdlicka, by her attorneys, GASIOREK, MORGAN, GRECO,

MCCAULEY & KOTZIAN P.C., demands a trial by Jury.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO,
MCCAULEY & KOTZIAN, P.C.**

BY:    <u>/s/ Raymond J. Carey</u>
Raymond J. Carey (P33266)
Attorney for Plaintiff
30500 Northwestern Hwy, Ste. 425
Farmington Hills, MI 48334
(248) 865-0001
rcarey@gmgmklaw.com

Date:  April 24, 2020